CHARLES H. BROWER, #1980-0
900 Fort Street, #1210
Honolulu, HI 96813
Telephone: (808) 526-2688
Facsimile: (808) 526-0307

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2011 AUG -2 AM 11: 47

S. TAMANAHA
CLERK

Attorney for Plaintiff
William M. Payne

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| WILLIAM M. PAYNE, <br><br> Plaintiff, <br><br>  vs. <br><br> GATE GOURMET, INC. JOHN DOES 1-5, JANE DOES 1-5, DOE CORPORATIONS 1-5, DOE PARTNERSHIPS 1-5, NON-PROFIT ORGANIZATIONS 1-5 and DOE GOVERNMENTAL AGENCIES 1-5, <br><br> Defendants. | CIVIL NO. 11-1-1632-08 R A N <br> (Other Civil Action) <br><br> COMPLAINT; SUMMONS |

### COMPLAINT

COMES NOW Plaintiff by and through his attorney, CHARLES H. BROWER, and for a cause of action against Defendants, alleges and avers as follows:

### FACTS

1.   Plaintiff WILLIAM M. PAYNE is and was at all times mentioned herein a resident of the City and County of Honolulu, State of Hawaii.


EXHIBIT A

2.    Defendant GATE GOURMET, INC., (hereinafter "GATE GOURMET") is a Delaware corporation with a principal place of business in Honolulu, Hawaii.

3.    The Defendants named in this Complaint under the names of JOHN DOES 1-5, JANE DOES 1-5, DOE CORPORATIONS 1-5, DOE PARTNERSHIPS 1-5, DOE NON-PROFIT ORGANIZATIONS 1-5 and DOE GOVERNMENTAL AGENCIES 1-5 (hereinafter "DOE DEFENDANTS") are persons, organizations or entities whose identities at the present time are unknown to Plaintiff despite the exercise of due diligence.  They are sued in this Complaint under fictitious names. Investigation as to the true identities was conducted by Plaintiff. Investigation as to the identity of DOE DEFENDANTS continues and Plaintiff is informed and believes and thereupon alleges that direct or indirect conduct of these other Defendants, presently unknown to Plaintiff, was or may have been a proximate cause of the incident complained of and/or the damage or loss thereby sustained by Plaintiff as a result of which all Defendants, unidentified and identified, may be legally, jointly, and severally liable to Plaintiff for the said losses sustained, inasmuch as the conduct of each Defendant may  have coincided and/or concurred with that of each and every other Defendant, named or unnamed.

4.    Plaintiff received a verbal offer of employment on June 29, 2009, for the position of Supervisor – Food Operations by Defendant GATE GOURMET.

5.   Plaintiff worked his first full day on July 8, 2009.   On July 9, 2009, Plaintiff heard the first occurrence of discriminatory remarks by management members describing some subordinates as "fags" and "homos".

6.   Plaintiff is Caucasian and was born and raised in the United States.

7.   Plaintiff suffered a work place injury on July 10, 2009, while employed by Defendant GATE GOURMET.

8.   Plaintiff suffered a second work place injury on September 15, 2009, while employed by Defendant GATE GOURMET.

9.   Plaintiff was terminated by Defendant GATE GOURMET on January 9, 2010.

10.   Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) which was assigned EEOC No. 486-2010-00277.

11.   On May 6, 2011, the EEOC issued a Dismissal and Notice of Rights.

12.   The Complaint to the EEOC alleged discrimination due to race (Caucasian), ancestry/national origin (American), disability, and retaliation.

13.   Plaintiff alleges the following facts relevant to his claims of discrimination:

   a.   On July 10, 2009, Plaintiff suffered an industrial injury.   Upon his release to return to work, the Human

Resources Manager ("HR Manager") and the Food Operations Manager ("Food Manager"),, who are Filipino would not comply with Plaintiff's doctor's instructions and limitations. Plaintiff was scheduled to work 10 to 13 hour days.

b.   Between September 1, 2009, and January 6, 2010, Plaintiff spoke with the HR Manager and the Food Manager and asked that company operations be conducted in English rather than Filipino dialects which were being used. No action was taken to respond to Plaintiff's complaint.

c.   On September 15, 2009, Plaintiff suffered a second industrial injury. Plaintiff informed the HR Manager and Director of Interior Operations ("Director") that he again needed to be examined by the company doctor for the injury. Plaintiff was informed by the Director Plaintiff could see the company doctor but to keep in mind that each time he did see the company doctor that it cost the company thousands of dollars.

d.   Plaintiff was denied the opportunity to visit the doctor while on company time. Shifts lasted from 10 to 13 hours which prevented Plaintiff from visiting the company doctor for his work injury during business hours when the office was open.

e.  On October 5, 2009, the HR Manager e-mailed Plaintiff to inquire as to whether Plaintiff had seen the company doctor. Plaintiff responded that based on the feedback he had received from the Food Manager and being prevented from visiting the company doctor during working hours, Plaintiff had seen his private doctor.

f.  Plaintiff complained to the HR Manager that several of the other managers were making fun of Plaintiff including questioning whether he really suffered a workplace injury. They called Plaintiff a "faggot" and a "homo". No action was taken by management to correct the problem, despite his complaints.

g.  On October 10, 2009, Plaintiff informed the Director that the work environment was discriminatory and hostile and it was aggravating Plaintiff's existing medical condition.

h.  On October 10, 2009, and October 17, 2009, Plaintiff e-mailed the Director and the HR Manager to again ask that they stop the practice of Plaintiff's co-workers of labeling Plaintiff with sexually oriented names. Plaintiff informed the Director ad the HR Manager that he had even been solicited to provide oral sex by two different employees, one of which was a manager. Plaintiff had originally made this report in July 2009.

i.   On December 16, 2009, Plaintiff complained to the Director and the HR Manager that the Food Manager had humiliated Plaintiff in front of his staff. The Food Manager did not treat other non-Caucasian managers in the same way he treated Plaintiff. Plaintiff also informed the Director and the HR Manager that the Food Manager was excluding Plaintiff from the regular operational meetings between September 1, 2009, and January 6, 2010.

j.   On several occasions Plaintiff saw the Food Manager use his bare fingers, with dirty fingernails, to eat food being produced for airline customers. The Food Manager would reach into the food with his bare hands, put it in his mouth, and return his fingers to the food after having had his fingers in his mouth to take the first bite. The Food Manager would work when he had visible and audible flu symptoms including unprotected coughing in the food area, and he regularly wore finger jewelry while touching and consuming food with his bare hands. Despite Plaintiff's reports, Management did nothing to correct this illegal action.

k.   On October 7, 2009, a co-worker stopped the operation by loudly and angrily shouting at Plaintiff in response to Plaintiff's efforts to correct a production error, "you friggin' faggot".

1.  On January 9, 2010, Plaintiff received a letter stating that his employment would be terminated effective that day.

m.  Plaintiff was fully capable of performing his job functions and was willing to do so prior to his termination.

## COUNT I

### VIOLATION OF STATE AND FEDERAL DISCRIMINATION LAWS

14.  Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

15.  The actions of Defendant's agents and employees were in violation of Hawaii Revised Statutes § 378-2(1)(A) and (3) and Title VII of the Civil Rights Act of 1964, as amended, in that Plaintiff was terminated, and suffered discrimination in terms, conditions, and privileges of his employment due to his race (Caucasian), ancestry/national origin, disability, and in retaliation for Plaintiff's opposition to discrimination and the reporting of his supervisor's actions.

16.  Plaintiff seeks an award of loss of income as well as other damages in an amount to be proven at trial for the discrimination for the discrimination.

<u>COUNT II</u>

<u>RETALIATION</u>

17.  Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

18.  The actions of Defendant's agents and employees in terminating Plaintiff or otherwise discriminating against him because he opposed the discrimination alleged herein in violation of H.R.S. § 378-2(2) and Title VII of the Civil Rights Act of 1964, as amended, for which Plaintiff is entitled to an award of damages to be proven at trial.

<u>COUNT III</u>

<u>HOSTILE WORK ENVIRONMENT</u>

19.  Plaintiff repeats and realleges all prior allegations as if set further fully herein.

20.  Plaintiff alleges that the acts alleged herein created a hostile work environment based upon discrimination for which he is entitled to an award of damages in an amount to be proven at trial.

<u>COUNT IV</u>

<u>INFLICTION OF EMOTIONAL DISTRESS</u>

21.  Plaintiff repeats and realleges all prior allegations as if set further fully herein.

22.  The discrimination alleged herein caused Plaintiff to suffer severe emotional distress due to intentional infliction of emotional distress by the actions of Defendant's agents and

employees for which Plaintiff is entitled to an award of damages to be proven at trial.

## COUNT V

### WHISTLEBLOWER'S PROTECTION ACT

23.   Plaintiff repeats and realleges all prior allegations as if set further fully herein.

24.   The discrimination and termination alleged was in violation of H.R.S. § 378-62 due to Plaintiff's report of a violation of law for which Plaintiff is entitled to an award of damages to be proven at trial.

25.   Plaintiff alleges the actions of Defendants were malicious and intentional discrimination for which an award of punitive damages is appropriate.

WHEREFORE, upon a hearing hereof, Plaintiff prays that judgment be entered on all Counts:

a.   For all damages to which Plaintiff is entitled, including general damages for discrimination, wrongful termination, and personal injury, and other damages to be proven at trial;

b.   For special damages, including back pay, front pay and other expenses;

c.   For punitive damages;

d.   For costs of litigation, reasonable attorney's fees, other costs and interest, including prejudgment interest; and

e.   For such other and further relief as is appropriate and to which Plaintiff is entitled by law.

The total amount of damages prayed for exceeds the minimum jurisdictional limits of this Court.

DATED:  Honolulu, Hawaii, _____, 2011.

_____
CHARLES H. BROWER
Attorney for Plaintiff
William M. Payne